IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MILES A. MERTENS d/b/a
MERTENS TACKLE,

                                                        OPINION AND ORDER

                    Plaintiff,

                                                        08-cv-41-bbc

     v.

BASS PRO OUTDOORS ONLINE,
LLC, BASS PRO, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a suit brought by plaintiff Miles A. Mertens, d/b/a Mertens Tackle, to enjoin defendants Bass Pro Outdoors Online, LLC and Bass Pro, Inc. from the unauthorized and infringing use of plaintiff's registered EYEBUSTER® mark. Plaintiff is seeking permanent injunctive relief, including the cessation by defendants of all use of the EYEBUSTER® mark or any mark likely to cause confusion with the EYEBUSTER® mark, together with monetary damages and attorney fees. In addition, plaintiff seeks statutory damages plus treble damages under 15 U.S.C. § 1117(b) upon a finding of willfulness; and a finding by the court that defendants' use of the term "Eyebuster™" constitutes use of a counterfeit mark as that term is defined in § 1116(d)(1)(B), together with an award of treble damages, for violation

1

of the Lanham Act, 15 U.S.C. § 1114 (trademark infringement) and 15 U.S.C. § 1125(a) (federal unfair competition and false designation of origin).  Also, plaintiff asserts violations of Wisconsin common law trademark infringement and state common law unfair competition.  The case is before the court on plaintiff's motion for summary judgment.

Unfortunately, the factual record is too undeveloped to permit a resolution of most of the issues in controversy.  The parties devoted many pages of their briefs to "facts" that they never proposed properly.  As explained in the court's Procedures to be Followed on Motions for Summary Judgment, § I.B.4, "[t]he court will not consider facts contained only in a brief."  The reason for this should be evident.  Doing so does not give the opposing party an adequate opportunity to contest the proposed fact.

From the few findings of fact proposed properly by the parties, I find that the following are both material and undisputed.

UNDISPUTED FACTS

Plaintiff Miles A. Merton owns a federal trademark registration for its EYEBUSTER® mark, "Fed. Reg. No. 2,338,745 for use on a "fishing tackle eye cleaning tool" International Class 28, first use anywhere at least as early as 1986 and use in commerce at least as early as 1986."  Plaintiff has used and promoted the mark in connection with fish tackle eye cleaning tools since 1986.

2

Anglers often use "jigs" in combination with live or artificial attractants to catch fish such as walleye. Sometimes the paint used to color the jig head covers the portion where the angler is supposed to thread and tie the fishing line. Users find it difficult to remove this paint by hand because the hole is so small. To solve this problem, plaintiff invented a tool to clear the unwanted paint from the hole in the jig head. The product is a tong-like device with a point that can be pressed down to pass through the hole to clear the paint. Once the paint is cleared, fishing line can be inserted through the hole and tied to the lure.

Plaintiff started a company to produce and market this tool. He has used the EYEBUSTER name since 1985 to identify himself and his company as the source and originator of the patented fishing tackle hole clearing tool. He obtained his federal registration in 2000. In 2006, he filed the paperwork necessary to establish incontestability under the Trademark Act and secured United States Patent and Trademark Office approval.

Plaintiff made sales of his product to major sporting goods retailers, including Cabela's, Gander Mountain and defendant. The product gained acceptance and widespread use. Plaintiff invested time and effort to promote his mark.

From 1988 until 2001, defendants Bass Pro Outdoors Online LLC and Bass Pro, Inc. purchased thousands of EYEBUSTER® fishing tackle hole clearing tools either directly from plaintiff or from his reseller, Gemini Sport Marketing.

In 2001, a representative of Laker Tackle persuaded defendant to offer for sale a jig

3

eye cleaning tool that Laker had designed and developed and had produced in China. When defendants began purchasing this tool in 2001, they discontinued their purchases of plaintiff's tool as a stand-alone item, although they continued buying plaintiff's tool from Gemini as part of fishing tool sets. Defendants called the Laker tool Eyebuster although plaintiff had never given defendants permission to use the EYEBUSTER® trademark on their fishing tackle hole cleaning tools. At the time this suit was filed, defendants were offering for sale on their website a jig cleaning tool that was the same size, shape and color as plaintiff's EYEBUSTER® and they were calling it an Eyebuster.

In April 2003, plaintiff called defendant to discuss the Laker tool. Plaintiff told defendants' merchandiser for terminal and accessories, Allen Wakefield, that he had registered the term EYEBUSTER as a federal trademark and that defendants could not use the term EYEBUSTER with the Laker tool. Wakefield found that defendants were using the term EYEBUSTER on their website and in a catalog.

From 2001-08, defendants sold approximately 2,775 of the Laker tools through their website for $5,421.65 in gross sales and $3,334.90 in profit. The tool appears on the website today as "Bass pro Shops® Jig Eye Cleaner." www.basspro.com/webapp/wcs/stores/servlet/SportingGoods_Fishing–Fishing+Equipment (visited Aug. 28, 2008). The parties dispute the number of jig eye cleaning tools that defendants sold using the term Eyebuster.

The packaging that defendants use for their jig eye cleaner does not use the term Eyebuster. It does display the Bass Pro Shops design mark.

## OPINION

A trademark gives its owner the exclusive right to use a word or device to distinguish his product from others. The law prohibits others from taking a free ride on the owner's mark and reputation by deceiving customers as to the source and quality of the trademarked product. 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, at § 2:4. Claims of unfair competition focus on the total physical image given by the product and the name together. Id. at § 2:7. The Lanham Act gives trademark registrants a civil remedy against any person who, without consent,

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .

15 U.S.C. § 1114(1)(a). In addition, it provides a civil remedy for unfair competition against any person who, in connection with any goods or services, "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

5

sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

15 U.S.C. § 1125(a).

In the first count of his complaint, plaintiff alleges that defendants used words, terms, names and colorable imitations or counterfeits of or copies of Mertens's EYEBUSTER® mark in connection with the sale, offering for sale or advertising of goods in violation of 15 U.S.C. § 1114. Second Am. Cpt., dkt. #26, at 6. He contends that defendants' use of the term "Eyebuster™" constitutes use of a counterfeit mark as that term is defined in 15 U.S.C. § 1116(d)(1)(B), that is, "a counterfeit of a mark registered on the principal register in the United States Patent and Trademark Office for such goods and services sold."

In the second count, plaintiff alleges that defendants' use of plaintiff's EYEBUSTER® mark for related or identical goods is likely to cause confusion or deceive an appreciable number of ordinary buyers as to the source of those goods, in violation of 15 U.S.C. § 1125(a). In the third and fourth counts of the complaint, he alleges violations of Wisconsin common law for the same acts described above. (As a general rule, state law follows the federal law as to likelihood of confusion.)

At this juncture, I can say only that it appears likely that plaintiff can prove at trial

6

that defendants' use of the term Eyebuster in connection with their sales of jig eye cleaners caused plaintiff damages under both § 1114 and § 1125(a) because the use was likely to cause confusion as to the origin of the product. Although plaintiff has not adduced any survey evidence of consumer confusion or direct evidence of confusion from consumers, it is undisputed that during some periods of time, in some of defendants' catalogues and on defendants' website, defendants sold their jig eye cleaning tool, using the exact term, "eyebuster," that plaintiff had registered.

However, I cannot determine from the undisputed facts whether, as plaintiff alleges, the products marked "eyebuster" are essentially indistinguishable from one another, whether defendants sold plaintiff's product and their own on their website at the same time or whether defendants sold the product through any retail outlet. It is fair to assume that the products were sold in the same general market (fishing accessories).

Defendants concede that they sold the Laker jig cleaning tool for approximately seven years on their website and took in $5,421.65 in gross profits for those sales. It is unclear whether, if plaintiff can prove that defendants' product infringed its own, it can prove any other sales using the infringing mark or any continuing infringing sales. As to whether plaintiff will be likely to prove the other claims it has asserted, it is impossible to tell from the present record.

7

ORDER

IT IS ORDERED that plaintiff Miles A. Mertens's motion for summary judgment is DENIED.

Entered this 10th day of September, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge